**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

ROBERT RAY CHISM PLAINTIFF

v. No. 2:07CV00150 JLH

CNH AMERICA LLC f/k/a
NEW HOLLAND NORTH AMERICA, INC. DEFENDANT

**OPINION AND ORDER**

This is a products liability case brought by Robert Ray Chism against New Holland North America, Inc., now known as CNH America LLC, for injuries that he sustained when his left arm[1] was caught in a New Holland Model 648 hay baler while Chism was attempting to remove loose hay that had accumulated near the top of the hay baler. Chism has testified in a deposition that he was baling hay when the machine plugged up. He crawled underneath the machine and unplugged it. After he was ready to resume baling hay, he saw something on the top flopping around like loose hay, so he decided to pull it out of the way. He climbed up on the hay baler so that he could reach the point he needed to reach in order to pull the loose matter out of the way. He testified, "When I caught a hold of the grass, it pulled it on through the roller or something caught my glove, one of the two." An employee named Arthur Adams came, turned off the tractor, and with a pry bar eventually rolled the machine backwards so that Chism could extract his arm. The arm was later amputated below the elbow.

Both Chism and CNH have filed motions to exclude expert testimony expected to be offered by the other. CNH has filed a motion to exclude testimony of Dr. Gary Krutz and Mr. Kevin Sevart

---

[1] The complaint alleges that Chism's right arm was injured, but the evidence submitted with the pending motions shows that his left arm was injured.

regarding guards and emergency stops or interlocks; a motion to exclude the testimony of Dr. Robert A. Aherin; a motion to exclude the testimony of Dr. Gerald F. Harris; and a motion to exclude any evidence of preferred warnings by plaintiff's experts. Conversely, Chism has filed a motion to exclude opinion testimony of a defense expert, Russell E. Marhefka.

**I.**

The use of expert evidence in federal court is governed by Federal Rule of Evidence 702, as interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the court must ensure that a proffered expert is qualified by his knowledge, skill, experience, training, or education before that person may testify as an expert. Besides examining a proffered expert's qualifications, the trial judge has a gatekeeping responsibility to ensure that expert evidence is both relevant and reliable before admitting it. *Daubert*, 509 U.S. at 589-91, 113 S. Ct. at 2795; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999). Rule 702 requires that the proffered expert testimony relate to an issue in the case and be sufficiently tied to the facts of the case, *i.e.*, that the expert testimony is a proper "fit" for the case. *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795-96; *see also Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir. 2001). The inquiry envisioned by Rule 702 regarding reliability is a "flexible one." *Daubert*, 509 U.S. at 594, 113 S. Ct. at 2797. The inquiry should focus on the principles and

methodology that the expert uses and not on the conclusions generated. *Id*. at 595, 113 S. Ct. at 2797. Four factors often will guide a district court's analysis: (1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) in the case of a particular scientific technique, what the known or potential rate of error is and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory has received "general acceptance" in the relevant scientific community. *Id*. at 593-94, 113 S. Ct. at 2796-97. However, many factors will bear on the inquiry, and these four factors should not be taken as a "definitive checklist or test." *Id*. at 593, 113 S. Ct. at 2796; *Kumho Tire*, 526 U.S. at 141-42, 119 S. Ct. at 1171. The additional relevant factors include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon*, 270 F.3d at 687 (citing cases).

The trial court's role is not to determine whether an expert's opinion is correct. It is an expert witness's methodology, rather than his conclusions, that is the primary concern of Rule 702. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). "'[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the scientist's methods, if there are good grounds for the expert's conclusion it should be admitted . . . .'" *Id.* (quoting *Heller v. Shaw Indus.*, 167 F.3d 146, 152-53 (3d Cir. 1999)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798.

"Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts

regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation and quotation omitted). "Only if an expert's opinion is 'so fundamentally unsupported that it can offer no assistance to the jury' must such testimony be excluded." *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)).

**II.**

**A. CNH'S MOTION TO EXCLUDE THE TESTIMONY OF DR. GARY KRUTZ AND MR. KEVIN SEVART REGARDING GUARDS AND EMERGENCY STOPS OR INTERLOCKS**

Dr. Gary Krutz is a professor of agricultural and biological engineering at Purdue University. He has a Ph.D. in agricultural engineering from Michigan State University. He has written a report stating that shields and warning devices should have been incorporated into the New Holland Model 648 hay baler. Shields covering the area where Chism was injured had previously been designed and manufactured by two engineers under his direction. The shields so designed and installed were field tested by the person for whom Dr. Krutz designed them, a farmer who had been injured by a New Holland hay baler and had sued New Holland. Dr. Krutz bases his opinions in part on his observations of hay balers manufactured by other companies. In addition to his own observations and the information supplied to him about this case, Dr. Krutz based his opinions on standards issued by the American Society of Agricultural Engineers and the American National Standards Institute. Dr. Krutz's resume shows that he is qualified to give expert testimony based on his knowledge, experience, training, and education. Furthermore, his testimony is based upon sufficient facts; his testimony is the product of reliable principles and methods; and he has applied the principles and methods reliably to the facts of this case. The alternate design that he proposed has been tested. His

opinions are based upon professional standards that have been subjected to peer review and publication, *i.e.*, the AASE and ANSI standards. His opinion is not so fundamentally unsupported that it cannot offer no assistance to the jury. *Hose*, 70 F.3d at 974.

In support of its argument that Dr. Krutz's testimony should be excluded, CNH first cites *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382 (8th Cir. 1995), where the Eighth Circuit affirmed a decision of the district court to exclude the testimony of an expert who had designed a safety bar for a stump cutter. The expert had never operated a stump cutter and had never looked at any other manufacturer's stump cutters. He did not test his guard, although the defendant did, and the defendant videotaped the stump cutter in operation with the guard. After seeing the videotape, the expert conceded that his guard needed further refinement – his design was not finished. The district court found that the design was not reliable or relevant because the concept was still evolving. Furthermore, with respect to peer review and publication, the expert had not contacted others in the industry to see if they had attempted to create a similar guard and had not submitted his concept to practitioners or academicians for scrutiny, nor had he done anything to see whether there was general acceptance of guards on stump cutters.[2] Here, although Dr. Krutz did not personally test the guards, the farmer for whom he designed them did, and he reported that they did not interfere with the operation of the hay baler. Furthermore, Dr. Krutz has observed similar hay balers manufactured by other farm implement manufacturers, and those hay balers had metal shields over the moving

[2] The district court also said that the expert could not use the testing done by the defendant because he had not participated in or supervised that testing, but the Eighth Circuit noted that an expert need not participate in testing in every instance in order to rely on it. *Id*. at 384 n.5.

belts in the area where Chism was injured. Those hay balers also were designed differently so as to avoid access to the top of the hay baler, and some of them had warning decals. *Pestel* is not on point.

CNH next cites *Dancy v. Hyster Co.*, 127 F.3d 649 (8th Cir. 1997). In *Dancy*, the Eighth Circuit affirmed the district court in excluding the testimony of a mechanical engineer who had never tested his proposed device and had never seen one on a similar machine. He had not even designed the device that he suggested. Here, the shields about which Dr. Krutz proposes to testify have been designed, installed, and tested. *Dancy* is not on point.

*Wagner v. Hesston Corp.*, 450 F.3d 756 (8th Cir. 2006), also cited by CNH, is closer. That case also involved a hand caught in a hay baler, albeit one that was manufactured several years before the New Holland Model 648. In *Wagner*, the district court excluded expert testimony that the baler should have had a safety guard at the intake point, should have had an emergency stop device, and should have featured an open throat, as opposed to a compression roller, design. *Id*. at 757. In affirming, the Eighth Circuit said:

> The court found that Sevart's[3] minimal testing of this theory (via limited and largely undocumented tests performed more than twenty years ago in connection with other litigation), the slim evidence of peer review, the lack of evidence showing general acceptance in the industry of safety guards for large round balers similar to the Hesston 5600, and Sevart's admission that all but one of his alternative guard designs were built in connection with litigation, all weighed against the admissibility of Sevart's testimony. Similarly, the District Court concluded that Chaplin's opinion was speculative and inadmissible because he tested his safety-guard theory by baling a single bale of hay, the test was performed on Wagner's baler for the sole purpose of this litigation, and there was no evidence of peer review or general acceptance of the theory. The District Court further noted Chaplin's concession during his deposition that his proposed alternative design was subject to clogging and maintenance problems.

[3] The expert in *Wagner* was John Sevart, Kevin Sevart's father.

*Id*. at 758-59. Here, Dr. Krutz's design was tested by a farmer who baled approximately 500 bales of hay using a New Holland Model 648 hay baler identical to the one that Chism was using in this case. It is true that the farmer had been injured when he slipped into the hay baler, that he had sued CNH, and that Dr. Krutz had been engaged as an expert witness on his behalf in his case against CNH. If Dr. Krutz's testimony relied solely on the testing by that farmer, his testimony might be excluded for reasons similar to those recited in *Wagner*. However, Dr. Krutz's testimony does not rely solely on that litigation-related testing. He has also observed similar guards on similar machines built by other manufacturers, and he has based his testimony on the AASE and ANSI standards, which are generally accepted in the engineering community. That his testing was performed by a farmer who sued CNH and in connection with that litigation is fodder for cross-examination, not grounds for excluding Dr. Krutz's testimony altogether.

CNH also argues that the shields would not have prevented Chism's injury, but Dr. Krutz says that in his opinion the lack of safety shields and warnings was a "substantial factor" in causing Chism's injuries. Whether the shield would have prevented Chism's injury is a point that can be developed on cross-examination and through CNH's witness, but it is not sufficient to exclude Dr. Krutz's testimony.

In the same motion, CNH moves to exclude the testimony of Kevin Sevart, a consulting engineer with a bachelor's degree in mechanical engineering and fifteen years' experience in the design and certification of operator protective structures for various offroad work machines, including agricultural tractors, and the design, fabrication, and testing of control systems to reduce the risks associated with agricultural equipment, industrial equipment, and consumer products. CNH

objects to his testimony regarding a guard, interlock, and emergency stop system. The relevant portion of Sevart's report states:

> **Emergency Stop as a Design Solution:**
>
> Emergency stop devices have seen widespread use in industrial settings since the early 1900's. Emergency stop devices have been utilized on presses, conveyors, ringer washers and numerous other pieces of industrial machinery in which a person may become entangled.
>
> Emergency stop mechanisms have also been utilized in agricultural equipment. In 1922, F.J. Bullock applied for a patent (NO. 1,557,139) for a "Safety Mechanism for Gearing". This patent describes an emergency stop mechanism for an ensilage cutting machine. Emergency stops were utilized on this type of agricultural machinery for many years. In 1962, D.D. Towne applied for a patent for a "Forage Wagon with Rotating Key Clutch". This clutch was an emergency stop device for a forage wagon. J.E. Kasten applied for a similar patent in 1964. Self-unloading forage wagons have utilized emergency stop systems since the mid-1960's, and still do today. In 1964, H.E. Maitland applied for a patent (3,258,083) for an "Ignition Control Safety Apparatus for Tractors". This patent described emergency stop systems for various agricultural implements. The John Deere Product Safety Manual, Issued in December 1969, advises the designer to "Consider emergency power shut-off controls for driven components into which a person might fall or be drawn."
>
> **Emergency Stop Testing**
>
> I have participated in an extensive amount of testing of Emergency Stop Systems. I have participated in retrofitting and testing three (3) large round balers with an emergency stop device. These have included a New Holland 630, New Holland 849 and a Gehl 1475. I have also had the opportunity to test systems that were installed by Advance Technology Inc. prior to my employment there. The emergency stop systems on which I participated in the design and installation on the New Holland balers utilized an emergency stop clutch that was purchased from Weasler. This clutch has been widely used on self-unloading forage wagons. The system installed on the Gehl utilized an electromagnetic clutch. The earlier emergency stop systems designed and installed by ATI utilized a simple "shear bolt" clutch mechanism.
>
> The testing of these various emergency stop systems has included tripping the emergency stop at various locations over the years as well as actual field use, baling various material.
>
> Some of the conclusions I have reached from this field testing include:

- An emergency stop will bring the baler components to a very rapid stop.
- Inclusion of an emergency stop system does not impair the function or utility of the baler.
- The components of the various emergency stop systems have proven reliable.

Although Sevart has not tested his emergency stop system on a New Holland Model 648 hay baler, he has tested it on similar hay balers, including two manufactured by New Holland. CNH does not point to any differences between these other hay balers and the New Holland Model 648 that would render the testing done on the other models inapplicable to the Model 648. While no manufacturer of hay balers has chosen to install emergency stop devices, the theory of emergency stop systems is well known and has resulted in widespread use of emergency stop devices in industrial settings since the early 1900s and in agricultural equipment as early as 1922. The Court cannot say that Sevart's opinions are so fundamentally unsupported that they can offer no assistance to the jury.

The Court is inclined to agree with CNH, however, when it says that the Court should question whether Sevart, a mechanical engineer, is qualified to render an opinion that Chism's injuries were enhanced due to the absence of a safety device such as the emergency stop system that he proposes. Based on the Court's ruling above, Sevart will be allowed to testify as to what such a device is designed to do and how it would operate, but whether he can testify that "Chism's injuries were enhanced due to the absence of a safety device" will depend on what kind of foundation can be laid for that opinion, including whether Sevart is qualified by education or experience to give such an opinion.

## B. THE MOTION TO EXCLUDE THE TESTIMONY OF DR. ROBERT A. AHERIN

CNH next moves to exclude the testimony of Dr. Robert A. Aherin, professor of agricultural safety and health program leader at the Department of Agriculture and Biological Engineering of the University of Illinois. Dr. Aherin has expressed three main opinions.

> 1. The belts and rollers located near the top of the New Holland Model 648 Round Baler should have been enclosed by a mechanical guard or at the minimum the nip points should have been guarded to prevent inadvertent contact and entanglement with the nip-points created by the rollers and belts. This is a requirement in ASABE, OSHA and ANSI standards. These standards basically state that all nip points should be guarded unless it would interfere with the normal function of the equipment. Guarding the nip points created by the belt and drive mechanisms on top of this model baler would not interfere with its normal function. In my professional opinion these belts and roller mechanisms are not guarded by location because of the easy access the manufacturer provided to the top of the baler through the design of the front of the baler. The design includes a step mounted on the left side of the drawbar that allows a person to step up to a designated work platform that is designed as part of the PTO guard. An operator or person could easily step from this platform to a flat ledge type structure that is formed by the shielding or cover over the net/twine box. This then provides a relative firm base for one to stand and reach up into the belt and drive mechanisms on top of this model baler. This should have been a foreseeable hazard by New Holland.
>
> 2. New Holland failed to warn operators of this model baler of the specific hazards that the belt and drive mechanisms created at the top of the Model 648 large round baler. Operators should have been warned of this danger both in the operators manual and by use of a warning label on the baler. There was a readily available pictorial warning of entanglement dangers associated with rollers in the American Society of Agricultural and Biological Engineers (ASABE) standard S441.2 Safety Signs that could be incorporated in a warning decal.
>
> 3. Because of the easy access to the top of the baler and New Holland's experience with other like designed balers, it should have been foreseeable that baler operators will at times climb up the baler when step or platform structures are built into the design of the equipment. Thus, exposing the operator directly to the rollers and belts at the top of the baler on occasions when they were both operating and not operating. If an emergency shut-off system could be proven to be reliable under typical operating conditions then such a system should have been provided by New Holland that would be easily accessible on the outside near the top of the baler. Also, considering a significant portion of the time when a round baler is serviced,

> maintained or operated these activities are often being performed by one person working alone warrants the need for a means to shut off the drive mechanisms of the baler in locations other than just at the operators station on the tractor.

CNH objects that Dr. Aherin has no engineering expertise, is not a design engineer and holds no degree from any engineering school, has never designed any piece of agricultural equipment, has never operated a round hay baler, has never actually seen the guards prepared by Dr. Krutz or the emergency stop system proposed by Kevin Sevart, and so his testimony is not based upon valid scientific reasoning or other methodology. CNH argues that all of his engineering opinions regarding guards and standards should be excluded, that Dr. Aherin should not be allowed to testify about design foreseeability, that he should not be allowed to testify that an emergency shut-off system should have been provided if it can be proven to be reliable under typical operating standards, and that he should not be allowed to give opinion testimony as to Chism's state of mind and what Chism saw. CNH further argues that Dr. Aherin should not be allowed to testify that it is well known in the agricultural equipment industry that farmers will often choose to leave the equipment running while doing the type of activity that Chism did in this instance because there is no adequate foundation for that opinion.

The Court agrees that Dr. Aherin should not be allowed to testify regarding Chism's state of mind, what Chism knew, or what Chism saw. It will not assist the jury to understand the evidence or to determine the fact in issue for an expert witness to opine as to Chism's state of mind, what he knew, what he saw, or what he intended.

The Court has no difficulty, however, in finding Dr. Aherin qualified to offer the remaining opinions to which he proposes to testify. The topic of his Ph.D. dissertation was Predicting and Analyzing the Safety Behavior of Farmers. He has been working in the field of agricultural safety

for over thirty years. He is responsible for the development and implementation of statewide loss prevention programs emphasizing agricultural safety. He teaches courses on agricultural safety and lectures on machine safety design principles, as well as the principles of warnings and safety labels. His teaching and his work include the subject of injuries associated with large round hay balers. He is a Certified Safety Professional, certified by the National Board of Certifying Safety Professionals since the late 1970s. Even though he is not a design engineer, he is qualified by knowledge, experience, training, and education to testify regarding the matters encompassed within his report. As indicated in the portions of his report quoted above, his opinions are based upon standards that are generally accepted in the scientific community, including standards of the American Society of Agricultural and Biological Engineers, OSHA, and ANSI standards, and thirty years of experience in the field of agricultural safety. The Court cannot say that his opinions are so fundamentally unsupported that they can offer no assistance to the jury. The motion to exclude Dr. Aherin's testimony is denied.

### C. MOTION TO EXCLUDE THE TESTIMONY OF DR. GERALD F. HARRIS

CNH has also moved to exclude the testimony of Dr. Gerald F. Harris, professor of biomedical engineering at Marquette University. In part, CNH moves to exclude testimony regarding the guards and safety devices that will be described by Krutz and Sevart, and that part of CNH's motion is based upon the same arguments made in the motions to exclude the testimony of those two expert witnesses. For the reasons described above, those arguments are overruled.

CNH also moves to exclude the opinion of Dr. Harris that it was foreseeable by the manufacturer "that not all owners, users and operators of the New Holland Model 648 hay baler would have sufficient biomedical knowledge and/or information to fully appreciate the hazards and

risks associated with normal usage." CNH objects that Dr. Harris cannot know the level of Chism's biomechanical knowledge and cannot be clairvoyant as to his mind. As stated above, the Court agrees that expert witnesses should not be permitted to give opinions regarding Chism's state of mind because such opinions are not helpful to the jury. Even so, the opinion that Dr. Harris proposes to give is not about Chism's state of mind but about what was foreseeable by manufacturers of hay balers, and CNH does not argue that Dr. Harris is unqualified to give an opinion on that issue.

As a part of the basis for his testimony on foreseeability, Dr. Harris has relied upon several articles published in professional journals about agricultural injuries in general and more particularly about injuries involving hay balers. CNH objects that these articles do not relate specifically to Chism or to CNH's hay balers and do not reflect any substantially similar accident, and so they are irrelevant to the case, confusing, and prejudicial, so they should be excluded pursuant to Rule 403 of the Federal Rules of Evidence. The admissibility of learned treatises is governed by Rule 803(18) of the Federal Rules of Evidence. That rule provides:

> Learned treatises. To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

It appears that these articles from professional journals are articles upon which Dr. Harris has relied, and it also appears that he can establish them in his testimony as reliable authority. If so, statements from those articles may be read into evidence but may not be received as exhibits, provided those statements, like all other evidence, meet the definition of relevant evidence in Rule 401 and survive a challenge under Rule 403. Rule 401 defines relevant evidence as evidence having a tendency to

make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The articles upon which Dr. Harris relies appear to be relevant to the issue of foreseeability based upon the definition of relevant evidence in Rule 401. On the other hand, no witness can be allowed to read the entirety of these articles into evidence because to do so would result in undue delay and waste of time. Accordingly, while Dr. Harris may refer generally to the literature on agricultural accidents and may, if asked, specify the articles upon which he has relied, he will not be permitted to read large portions of these articles to the jury. If there are particular statements that plaintiff believes should be read into evidence pursuant to Rule 803(18), plaintiff's counsel must give defense counsel advance notice of which excerpts will be read so that defense counsel will have the opportunity to object out of the presence of the jury.

**D. MOTION TO EXCLUDE ANY EVIDENCE OF PREFERRED WARNINGS BY PLAINTIFF'S EXPERTS**

In addition to the three motions discussed above, CNH has filed a motion to exclude any evidence by any of the plaintiff's experts regarding warnings because none of them has performed any test or analysis with respect to warnings. CNH's argument is that any such testimony would be based on nothing more than the expert's *ipse dixit*. *See Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 539 (7th Cir. 2000) (affirming the exclusion of testimony that a warning was inadequate where the expert had not drafted an alternative and was essentially "talking off the cuff"); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (affirming the exclusion of testimony where the experts had not created or designed a warning and could specify no manufacturer that had used warnings such as those prepared).

Here, as has been explained above, the plaintiff's experts are not "talking off the cuff." Drs. Krutz and Aherin have included in their reports comments about the adequacy of the warnings provided by CNH, and those comments are supported by specific references to warnings on other hay balers, to ASAE and ASABE standards, or both. The motion to exclude evidence of preferred warnings is denied.

### E. PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DEFENSE EXPERT RUSSELL E. MARHEFKA

Chism has moved to exclude the testimony of defense expert, Russell Marhefka, a human factors engineering expert who will offer opinions on the manner in which people interact with a product and how that interaction applies to the design of a product from a reliability and safety perspective. Chism has not moved to exclude Marhefka's testimony in its entirety but has moved to exclude the following statements: that Chism's actions were a knowing misuse of the baler; that Chism knowingly performed an unsafe act; that Chism intentionally encountered the entanglement hazard; that Chism intentionally placed himself at risk and thereby failed to act as a reasonable person would have acted; that Chism was "egregiously incautious"; that the testimony of Arthur L. Adams must be given a "great deal of weight"; that Adams "had no ax to grind and absolutely nothing to gain" from his testimony; that Adams had "only to lose, per his employer/employee relationship with Mr. Chism, as a result of his obviously forthright testimony; and that Adams's testimony "clearly depicts Mr. Chism's prior knowledge of the hazards associated with an attempt to clear debris from the top of the hay baler." CNH agrees that Marhefka cannot testify regarding the weight to be given Arthur Adams's testimony, that Arthur Adams had no ax to grind and nothing to gain, that he had only to lose as a result of his forthright testimony, and that his testimony clearly

depicts Chism's prior knowledge of the hazard. Consequently, the motion is granted with respect to those opinions.

The Court has already held that it is not helpful to the jury for an expert witness to give an opinion as to Chism's state of mind. Therefore, Marhefka will not be permitted to testify that Chism knowingly misused the baler, knowingly performed an unsafe act, intentionally encountered the entanglement hazard, or intentionally placed himself at risk. He may testify that Chism misused the baler and performed an unsafe act when he encountered the entanglement hazard, but he may not testify regarding Chism's state of mind.

**CONCLUSION**

For the reasons stated above, the defendant's motion to exclude plaintiff's tendered expert opinions concerning guards and emergency stops or interlocks is GRANTED IN PART and DENIED IN PART. Document #52. Defendant's motion to exclude Dr. Robert A. Aherin is GRANTED IN PART and DENIED IN PART. Document #54. Defendant's motion to exclude the testimony of Dr. Gerald F. Harris is GRANTED IN PART and DENIED IN PART. Document #56. Defendant's motion to exclude evidence of preferred warnings is DENIED. Document #65. Plaintiff's motion to exclude the testimony of Russell E. Marhefka is GRANTED IN PART and DENIED IN PART. Document #67.

IT IS SO ORDERED this 30th day of March, 2009.

J. Leon Holmes

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE