**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

ROBERT RAY CHISM                                                                                    PLAINTIFF

v.                                       No. 2:07CV00150 JLH

CNH AMERICA LLC f/k/a
NEW HOLLAND NORTH AMERICA, INC.                                                     DEFENDANT

**OPINION AND ORDER**

CNH America LLC has filed a motion for partial summary judgment on the punitive damage claim of Robert Ray Chism. CNH has also moved in the alternative to bifurcate the punitive damages issues under Federal Rule of Civil Procedure 42(b). Chism has responded to both motions. For the following reasons, CNH's motion for partial summary judgment will be denied and CNH's motion to bifurcate will be granted.

**I.**

This is a products liability case brought by Robert Ray Chism against New Holland North America, Inc., now known as CNH America LLC, for injuries that he sustained on August 14, 2007, when his left arm[1] was caught in a New Holland Model 648 hay baler while Chism was attempting to remove loose hay that had accumulated near the top of the hay baler. Chism has testified in a deposition that he was baling hay when the machine plugged up. He crawled underneath the machine and unplugged it. After he was ready to resume baling hay, he saw something on the top flopping around like loose hay, so he decided to pull it out of the way. He climbed onto the twine box of the hay baler so that he could reach the point he needed to reach in order to pull the loose matter out of the way. He testified, "When I caught a hold of the grass, it pulled it on through the

---

[1] The complaint alleges that Chism's right arm was injured, but the evidence submitted with the pending motions shows that his left arm was injured.

roller or something caught my glove, one of the two." An employee named Arthur Adams came, turned off the tractor, and with a pry bar eventually rolled the machine backwards so that Chism could extract his arm. The arm was later amputated below the elbow.

Chism's theory of the case is that CNH should have had shields over the area where Chism reached in to pull loose hay from the top of the hay baler and that it should have had warnings in addition to or other than the warnings that were on the hay baler. CNH contends that the pinch point where Chism's arm was caught is "guarded by location" pursuant to ANSI/ASAE Standard S493 and that it had a warning directing operators to disengage the machinery before servicing the tractor or equipment. When CNH says that the pinch point was guarded by location, it means that the pinch point could not be reached either from the operator's proper location on the tractor or from the ground. Chism argues, however, that CNH could foresee that farmers would climb to a certain point on the hay baler where they could reach that pinch point, and in fact the hay baler seems to have been designed with a view toward facilitating precisely that movement. Furthermore, Chism argues that others have been injured in a manner substantially similar to the manner in which he was injured, and that CNH made no changes in the design or in the warnings so as to avoid future injuries.

**II.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

**III.**

Inasmuch as this is a diversity case, the substantive law governing the case is the law of the State of Arkansas. The standard for an award of punitive damages is set by statute:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
>   (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continue the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred.
>
>   (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

ARK. CODE ANN. § 16-55-206. Arkansas requires that, to obtain punitive damages, the plaintiff must prove that standard by clear and convincing evidence. "A plaintiff must satisfy the burden of proof required under § 16-55-206 by clear and convincing evidence in order to recover punitive damages from the defendant." ARK. CODE ANN. § 16-55-207. In ruling on a motion for summary judgment, the court must "view the evidence through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254, 106 S. Ct. at 2513. If a rational trier of fact could not conclude by clear and convincing evidence that CNH knew or ought to have known that its conduct would naturally and probably result in injury or damage and that it continued the conduct with malice or in reckless disregard of the consequences from which malice may be inferred, summary judgment is proper. *Sokol & Associates, Inc. v. Techsonic Industries, Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).

The undisputed facts show that the Model 648 was manufactured from August 1998 through June 2002. Chism purchased his hay baler in 2001 and used it for six years without incident before the accident in question occurred. A total of 7,267 Model 648 units were produced. One person

other than Chism sustained injury at the top or the open area of a Model 648 hay baler. The one other person who was injured at the open area at the top of a Model 648 was a Mr. Hicks. On May 31, 2003, Mr. Hicks fell from the uppermost position on the baler after having climbed up there to access the area for the purpose of troubleshooting a belt tracking problem. He slipped, and his left arm went into the pinch point. His right arm became entangled as he tried to free his left arm. He lost both arms.

The Model 648 hay baler was one of the "6" Series of models, which were produced from April 1989 through June 2002. A total of 57,826 of those units were produced. Four other persons were injured on models in the "6" Series other than Model 648. A Mr. Lenevich was injured on a Model 630 in 1999 as he attempted to remove excess hay from the hay baler while the PTO was engaged as he stood on the twine box. While using a knife to scrape hay off of the non-drive roller, the knife fell from his hand, and he lost balance. He put his right hand out to stop himself from falling, and his hand was pulled in between the non-drive roller, drive roller, and the belts. His was the only such injury on a Model 630, of which 4,529 were produced.

In 1994, a Mr. Hanson was injured on a Model 640. After unsuccessfully trying to cut hay off the rollers with the PTO disengaged, he re-engaged the PTO, climbed onto the twine box to try to cut the hay, and had his fingertips pulled into the rollers. His right arm was amputated below his elbow. His was the only injury on a Model 640, of which 4,305 were produced.

A Mr. Donaldson was injured in 1998 on a Model 664. His arm became entangled in exposed nip points at the top of the baler while he was standing on the right tire of the baler. He had been trying to hear the noise created by a bad bearing that could only be heard while the baler was running. His arm had to be amputated. His was the only such injury on a Model 664, of which 6,442 were produced.

In 1997 a Mr. Friedrich was injured on a Model 660. Like Mr. Donaldson, he was trying to hear the noise created by a bad bearing, so with the baler running, he placed his ear against the side of the baler while standing on the tire. To steady himself, he placed his left hand atop the baler and his right hand was pulled in by the rotating belts. Mr. Friedrich's hand was spared but with significant impairment. His was the only injury on a Model 660, of which 7,660 units were manufactured.

In sum, 57,826 hay balers of the "6" Series were produced from 1989 through 2002. Over the past twenty years, a total of six injuries have occurred at the top of these hay balers, including the injury to Mr. Chism. Four of those six injuries occurred before Mr. Chism purchased his hay baler, and three of them occurred before Chism's hay baler was manufactured in 1998. Although he purchased his hay baler in October 2001, the manual for his baler is dated July 1998, which suggests but does not necessarily prove that it was manufactured then. Arkansas law provides that "[i]n determining the liability of the manufacturer, the state of scientific and technological knowledge available to the manufacturer or supplier at the time the product was placed on the market, rather than at the time of the injury, may be considered as evidence." ARK. CODE ANN. § 16-116-104(a)(1). It is not clear whether "placed on the market" refers to the date of manufacture of a specific product or the date of sale of a specific product. The only difference between the two dates is that one of the other injuries that occurred on a "6" Series hay baler occurred in 1999, after Chism's hay baler was manufactured.

The parties agree that the applicable safety standard is ANSI/ASAE S493, approved in July 1989 and reaffirmed in July 1993. That standard is entitled "Guarding for Agricultural Equipment." Section 3 of the standard requires guarding, where practicable and reasonable, for nip-points, revolving shafts, and other revolving parts. Paragraph 2.7 defines "nip-point" as "a pinch point

5

characteristic of components such as meshing gears and the run-on point where a belt, chain or cable contacts a sheave, sprocket, or idler." Section 5 of the standard provides for safety distance guarding, which is simply protecting persons from hazards by placing the hazards at a distance. Chism relies on paragraph 5.3, which says, "Safety distance from a hazard to a guard is based on measurements from the location which a party can occupy with reference to the hazard." He notes that the hazard in which his arm became entangled was less than the required distance from where he was standing on the twine box. CNH relies upon paragraph 5.2, which provides:

> It is possible to circumvent the protection provided by a safety distance as specified in paragraph 5.3 by the misuse of steps, ladders, boxes, chairs, etc., but the general principle of a safety distance is acceptable provided the following criteria are met so that the hazards are out of reach.

According to CNH, the Model 648 was in compliance with this standard even though a person standing on the twine box could reach the hazard in which Chism's arm became entangled. Chism's experts disagree, noting that the hay baler was designed in such a manner that climbing onto the twine box was easy to do, so that CNH should have foreseen that operators would do so.

Viewing this evidence in the light most favorable to Chism, a reasonable jury could find that by either 1998 or 2001 CNH knew that the open area at the top of its "Six Series" hay balers was not successfully guarded by location. By 1998, three persons had suffered hand or arm injuries in that location, one of them by standing on the twine box. By 2001, one more person suffered a hand injury by standing on a twine box. Two of these four persons had suffered amputations. CNH's own employees have stood on the twine box while the hay baler was operating in order to diagnose a problem. CNH's design engineer testified that the twine box is a good place to stand to watch the baler running and that CNH had "provided a safe way for people to access that area." Thus, a reasonable jury could conclude that CNH designed the Six Series hay balers to facilitate standing

on the twine box, which places a person within reach of unguarded hazards that ANSI/ASAE Standard S493, while contending that those hazards are guarded by location. When the evidence of prior serious injuries at that location is considered in conjunction with the evidence that CNH designed the baler so as to facilitate climbing onto the twine box while the machine is running, a reasonable jury could conclude CNH knew that leaving the open area unprotected by a shield would naturally and probably result in injury and that it continued to leave the open area unshielded in reckless disregard of the consequences; from which malice may be inferred.

> A jury may be instructed on punitive damages when there is evidence that a defendant likely knew or ought to have known, in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of the consequences, from which malice could be inferred.

*Arrow Intern., Inc. v. Sparks*, 81 Ark. App. 42, 55, 98 S.W.3d 48, 57 (2003) (citing *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998); *Dixon Ticonderoga Co. v. Winburn Tile Mfg. Co.*, 324 Ark. 266, 920 S.W.2d 829 (1996)).

CNH argues that *Lockley v. Deere & Co.*, 933 F.2d 1378 (8th Cir. 1991) is instructive because in that case there was not enough evidence to submit the punitive damages issue to the jury and there were nineteen previous "substantially similar" incidents and the product initially had no warnings or cautions included. However, that case is distinguishable because there was evidence that the defendant began placing warning decals on the product, then changed the design, and began a program to investigate retrofitting older models with the safer design. *Id.* at 1390. Here, it is the combination of the evidence of injuries and the evidence that CNH facilitated standing on the twine box, from which the pinch point is not guarded by location, that create an issue of fact on the issue of punitive damages. Both facts go directly to CNH's knowledge of how the product might have been used. There is evidence that CNH wanted to provide access to stand on the twine box even

though it knew that from the twine box the pinch point was not guarded by location. Punitive damages are appropriate in products liability cases when a manufacturer "knew that the product would naturally or probably result in injury and continued to market it in reckless disregard of the consequences." HOWARD W. BRILL, ARKANSAS LAW OF DAMAGES § 9:2, at 113 (5th ed. 2004). A jury could find that CNH knew that the top of the baler in the Six Series was not guarded by location, was a place where farmers likely could stand while the machine was operating, was a place from which a person could reach a pinch point, and a place from which injury could be catastrophic – including having an arm amputated – and yet CNH did not address these hazards. Thus, there are genuine issues of material fact as to whether CNH knew or should have known under the circumstances that the way the hay balers were designed would naturally or probably result in injury and whether CNH continued to market it in reckless disregard of the consequences. CNH is not entitled to partial summary judgment on punitive damages.

## IV.

Federal Rule of Civil Procedure 42(b) provides that the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. "The decision of whether to isolate the punitive damages phase of the trial is within sound discretion of the trial court." *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213-14 (8th Cir. 1999). Although not binding on this Court, under Arkansas law, if a plaintiff seeks punitive damages and either party requests bifurcation, the issues of compensatory and punitive damages must be bifurcated. *See* ARK. CODE ANN. § 16-55-211(a)(1). Likewise, under Arkansas law, evidence of the financial condition of the defendant is not admissible with regard to any compensatory damages determination, although it would be relevant to punitive damages. ARK. CODE ANN. § 16-55-211(b). Although the Arkansas law relating to procedure and admissibility of evidence is not binding on this Court, a bifurcation of

the issues would prevent any prejudice on the liability and compensatory damages phase from evidence admitted during the punitive damage phase. *Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997). In this case, bifurcation of liability and compensatory damages issues from the punitive damages issue would prevent prejudice and comport with Arkansas law. Therefore, CNH's motion to bifurcate will be granted.

## CONCLUSION

For the reasons stated above, CNH's partial motion for summary judgment on punitive damages is DENIED. Document # 59. CNH's motion to bifurcate is GRANTED. Document # 62.

IT IS SO ORDERED this 30th day of March, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE